**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                                                    Chapter 11

HUBBARD PROPERTIES, LLC,                                   Case No. 8:11-bk-01274-KRM

    Debtor.
_____/

**OBJECTION TO PROOF OF CLAIM OF**
**INVESTORS WARRANTY OF AMERICA**

The Official Committee of Unsecured Creditors ("**Committee**"), by and through its undersigned counsel, files this Objection to Proof Claim of Investors Warranty of America ("**Objection**") pursuant to 11 U.S.C. § 502 Rule 3007 of the Federal Rules of Bankruptcy Procedure and requests that this Court determine the amount of Investor Warranty of America's ("**IWA**") claim and whether such claim is enforceable against the Estate. In support thereof, the Committee states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory basis for the relief sought herein is 11 U.S.C. § 502.

**FACTUAL BACKGROUND**

2. On August 12, 2004, Hubbard Properties, LLC (the "**Debtor**"), executed and delivered to Bank of America a Promissory Note in the original principal amount of $16,500,000.00. Thereafter, Bank of America made several future advances to the Debtor which culminated with the Debtor executing and providing Bank of America with that certain Promissory Note dated December 31, 2006, in the original principal amount of $19,100,000.00.

3. On October 1, 2007, Bank of America executed that certain Assignment of Mortgage and Other Loan Documents wherein Bank of America assigned all of its right, title and interest in the Promissory Note and related loan documents to Transamerica Financial Life Insurance Company ("**Transamerica**").

4. On October 1, 2007, the Debtor executed and delivered to Transamerica that certain Amended and Restated Renewal Secured Promissory Note ("**Renewal Note**") in the original principal amount of $23,000,000.00. Thereafter, Transamerica made future advance to the Debtor which culminated with the Debtor executing and providing Transamerica with that certain Second Amended and Restated Renewal Secured Promissory Note dated May 1, 2008 ("**Second Renewal Note**"), in the original principal amount of $23,457,759.59.

5. The Second Renewal Note is alleged to be secured by a first mortgage lien on the Debtor's real and personal property comprised of a retail and entertainment complex located in Madeira Beach, Florida, commonly known as John's Pass Boardwalk ("**Marina Property**"). The Second Renewal Note is further alleged to be secured by that certain Absolute Assignment of Leases and Rents dated October 1, 2007 ("**Assignment of Rents**").

6. Thereafter, Transamerica executed that certain Assignment of Mortgage, Security Agreement and Fixture Filing and Other Loan Documents dated June 24, 2009, wherein Transamerica assigned all of its rights and interests in the Second Renewal Note and associated loan documents to IWA.

7. On December, 5, 2008, AEGON USA Realty, Inc ("**AEGON**"), an authorized agent of both Transamerica and IWA (AEGON and IWA shall collectively be referred to as "**IWA**"), provided the Debtor with a Notice of Default and Intent to Accelerate thereby alleging that the Debtor was in default under the Second Renewal Note for failing to pay all payments when due.

8. On January 15, 2009, AEGON provided the Debtor with its Notice of Revocation of Landlord's License to Collect Rents ("**Notice of Revocation**") thereby giving the Debtor notice that AEGON, on behalf of IWA, intended to collect all rents generated by the Marina Property and hold the same for the benefit of IWA. Other than providing the Debtor with the Notice of Revocation, IWA failed to follow the procedural steps set forth in Fla. Stat. § 697.07 in seeking to enforce its Assignment of Rents. The Assignment of Rents created at best a lien in favor of IWA in the rents generated by the Marina Property and IWA was required to foreclose that lien in accordance with Fla. Stat. § 697.07.

9. In March of 2009, the Debtor and IWA began to negotiate the terms of a forbearance agreement whereby the Debtor would be provided with the opportunity to cure any alleged default under the Second Renewal Note and related loan documents and bring its obligations thereunder current. Unfortunately for all parties to this proceeding, the Debtor and IWA failed to reach agreement on the terms of a forbearance agreement.

10. Instead, beginning in February of 2009, IWA, without seeking to foreclose its mortgage or Assignment of Rents on the Marina Property, took control of the Debtor's operations and began collecting any and all rents and revenues generated by the Debtor's operations.

11. Specifically, in taking control of the Debtor's operations, IWA retained Commercial Florida Management, LLC ("**CFM**") to oversee and manage the day to day operations of the Debtor. CFM reported directly to IWA and IWA approved any and all expenditures related to the Marina Property, including but not limited to the approval of any payments to the Debtor's unsecured creditors. After CFM was retained by IWA, the Debtor lost all ability to control and mange its operations. Instead, any decisions related to the operations of the Marina Property,

including decisions related to tenant improvements, leases, and retaining new tenants, were either made or approved by IWA.

12. In taking control of and dominating the Debtor's operations, IWA also began collecting all rents and revenues generated by the Marina Property and deposited the same into what was alleged to be an interest bearing lock box account maintained by IWA. In actuality, the account where the Debtor's rents and revenues were deposited was a commingled account in which IWA deposited money from multiple parties for IWA's benefit. As of the date of this Objection, IWA has been unable to provide the Debtor with a concise accounting or understanding of how the funds collected by IWA were applied to the amounts due and owing under the Second Renewal Note or utilized by IWA in operating the Debtor's business.

13. On January 27, 2011, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code to both reorganize its obligations to creditors and to re-take control of its operations from IWA.

14. Certain of the unsecured creditors of the Debtor were damaged by IWA taking control of the Debtor's operations because IWA unilaterally decided which of the Debtor's unsecured creditors held valid claims against the Debtor and dictated which of the these unsecured creditors would be paid by CFM.[1]

**BASIS FOR RELIEF**

15. A proof of claim is "a written statement setting forth a creditor's claim" and must "conform substantially" to Official Form 10. Fed. R. Bankr. P. 3001(a). *See also* Fed. R. Bankr. P. 9009 (requiring that the Official Forms must be observed and used when appropriate). Pursuant to

---

[1] Pursuant to Florida law, a lender who strays far from its role as a mere mortgagee and instead takes control or exercises lender dominance over a mortgagor may be found liable for the obligations of the mortgagor. *Dawson v. Stockton*, 346 So.2d 603 (Fla. 1st DCA 1977).

Rule 3001(c), when a proof of claim is based on a writing, the original or duplicate of that writing should be attached and filed with the proof of claim. Rule 3001(d) further requires that when a claim is alleged to be secured by the debtor's property the creditor is required to provide evidence of the security interest when filing its claim. When properly executed and filed, a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).

16. In reviewing Proof of Claim 17 ("**Claim 17**") it is clear that IWA failed to follow the guidelines set forth in Rule 3001 and Official Form 10 for the filing of a presumptively valid proof of claim. Specifically, in filing Claim 17 IWA simply took an excerpt from its state court foreclosure complaint that contained an alleged history of the lending relationship between IWA and the Debtor and attached the same as proof of the underlying debt alleged to be owed by the Debtor to IWA. IWA failed to attach the Second Renewal Note, Assignment of Rents, mortgage or any other loan document related to IWA's lending relationship with the Debtor.

17. More importantly, Claim 17 completely fails to provide a detailed accounting of IWA's alleged $28,404,980.15 secured claim, including the $5,799,935.44 of interest and costs alleged to be due and owing under the Second Renewal Note. As set forth in more detail above, beginning in February of 2009, IWA took over full control of the Debtor's operations, including the rents and revenues generated by the Marina Property. It was IWA, and not the Debtor, that controlled how the funds generated by the Marina Property were applied to the amounts due and owing under the Second Renewal Note and it is incumbent upon IWA to properly account for how those funds were applied, utilized or spent by IWA. The need for IWA to account for how all funds generated by the Mortgaged Property after February of 2009 is crucial given that IWA failed to deposit and maintain these funds in a segregated lock box account for the benefit of IWA, the Debtor and the Debtor's unsecured creditors.

18. Pursuant to 11 U.S.C. § 502, upon the filing of the instant Objection, the Court is required to determine the exact amount of IWA's claim as of the petition date. For this Court to determine the amount due under the Second Renewal Note, it is incumbent upon IWA to come forward with competent evidence regarding its use of any and all funds generated by the Marina Property after February of 2009.

19. The Committee expressly reserves the right to amend this Objection to include additional claims and defenses in accordance with 11 U.S.C. § 502(b)(1) and to bring any other claims against IWA through contested matter or otherwise.

WHEREFORE, the Official Committee of Unsecured Creditors respectfully requests that this Court enter an order: (i) sustaining this Objection; (ii) determining the amounts due and owing to IWA under Claim 17 and the Second Renewal Note; and (iii) grant such other and further relief as this Court deems appropriate and just.

**DATED** this 8th day of July, 2011.

*/s/ Patrick M. Mosley*
Michael P. Brundage
Florida Bar No. 611621
Patrick M. Mosley
Florida Bar No. 0033735
Hill, Ward & Henderson, PA
101 E. Kennedy Blvd., Suite 3700
Tampa, Florida 33602
Telephone: (813) 221-3900
Facsimile: (813) 221-2900
Email: mbrundage@hwhlaw.com
Email: pmosley@hwhlaw.com

*Counsel for Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Objection to Proof Claim of Investors Warranty of America has been provided by electronic notification via CM/ECF and/or by First Class U.S. Mail Postage Prepaid on this 8th day of July, 2011, to the following:

United States Trustee
501 East Polk Street, Suite 1200
Tampa, Florida 33602

Hubbard Properties, LLC
150 John's Pass Boardwalk West
Madeira Beach, FL 33708

David S. Jennis
Kathleen L. DiSanto
Jennis & Bowen, P.L.
400 N. Ashley Drive, Suite 2540
Tampa, Florida 33602

W. Keith Fendrick
Holland & Knight LLP
100 N. Tampa St., Suite 4100
Tampa, Florida 33602

                                                    */s/ Patrick M. Mosley*
                                                    Patrick M. Mosley

2387417v1