UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

HUBBARD PROPERTIES, LLC,                    Case No. 8:11-bk-1274-KRM
                                             Chapter 11

        Debtor.

_____/

## AMENDED PLAN OF REORGANIZATION OF HUBBARD PROPERTIES, LLC

David S. Jennis
Florida Bar Number 775940
James-Allen McPheeters
Florida Bar Number 65434
**JENNIS & BOWEN, P.L.**
400 North Ashley Dr., Ste. 2540
Tampa, Florida  33602
Telephone: (813) 229-1700
Facsimile: (813) 229-1707
djennis@jennisbowen.com
Counsel to Debtor and
Debtor-In-Possession

Dated:  November 15, 2011

THIS AMENDED PLAN OF REORGANIZATION HAS NOT BEEN CONFIRMED BY THE BANKRUPTCY COURT.  A HEARING TO CONSIDER THE CONFIRMATION OF THIS AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1129 OF THE BANKRUPTCY CODE WILL BE SCHEDULED BY SEPARATE ORDER OF THE BANKRUPTCY COURT.  THE DEBTOR RESERVES THE RIGHT TO MODIFY OR SUPPLEMENT THIS AMENDED PLAN OF REORGANIZATION AND THE ACCOMPANYING AMENDED DISCLOSURE STATEMENT UP TO AND INCLUDING THE TIME OF CONFIRMATION OF THE AMENDED PLAN OF REORGANIZATION.  THE DEBTOR IS NOT CURRENTLY SOLICITING VOTES ON THE AMENDED PLAN OF REORGANIZATION.

# TABLE OF CONTENTS

ARTICLE 1 ............................................................................................................. 1
    DEFINITIONS ................................................................................................... 1
ARTICLE 2 ........................................................................................................... 10
    TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX
    CLAIMS .......................................................................................................... 10
    2.1    Administrative Expense Claims .................................................... 10
    2.2    DIP Financing Claims .................................................................. 11
    2.3    Priority Tax Claims. ..................................................................... 11
ARTICLE 3 ........................................................................................................... 11
    CLASSIFICATION OF CLAIMS AND INTERESTS ................................... 11
    3.1    Class 1 – Unsecured Priority Claims ........................................... 12
    3.2    Class 2 - Secured Tax Claim of Pinellas County Tax Collector. ..... 12
    3.3    Class 3 – IWA Secured Claim. .................................................... 12
    3.4    Class 4 – Tenant Loan Secured Claims. ...................................... 12
    3.5    Class 5 – Administrative Convenience Claims. ........................... 12
    3.6    Class 6 – General Unsecured Claims. .......................................... 12
    3.7    Class 7 – IWA Deficiency Claim. ................................................ 12
    3.8    Class 8 – Equity Interests. ........................................................... 13
ARTICLE 4 ........................................................................................................... 13
    TREATMENT OF ALLOWED CLAIMS AND INTERESTS ....................... 13
    4.1    Class 1 – Priority Claims ............................................................. 13
    4.2    Class 2 - Secured Claim of Pinellas County Tax Collector. .......... 13
    4.3    Class 3 – IWA Secured Claim .................................................... 14
    4.4    Class 4 – Secured Tenant Loan Claims ....................................... 16
    4.5    Class 5 – Administrative Convenience Claims. ........................... 17
    4.6    Class 6 – General Unsecured Claims. .......................................... 17
    4.7    Class 7 – IWA Deficiency Claim. ................................................ 18
    4.8    Class 8 – Equity Interests. ........................................................... 19
ARTICLE 5 ........................................................................................................... 19
    MEANS FOR EXECUTION OF PLAN ......................................................... 19
    5.1    Plan Funding. ............................................................................... 19
    5.2    Funding of Operations .................................................................. 19
    5.3    Management of the Reorganized Debtor ....................................... 19
    5.4    Continued Corporate Existence .................................................... 19
    5.5    Corporate Action. ........................................................................ 20
    5.6    Payments of Claims and Equity Interests. ................................... 20
    5.7    Addresses for Distributions to Holders of Allowed Claims. .......... 20
    5.8    Disputed Claims. ......................................................................... 20
    5.9    Unclaimed Property. .................................................................... 21
    5.10  Exoneration and Reliance. ............................................................ 22
    5.11  Effectuating Documents and Further Transactions. ...................... 22
ARTICLE 6 ........................................................................................................... 22
    EFFECTS OF PLAN CONFIRMATION ....................................................... 22
    6.1    Discharge and Injunction. ............................................................ 22

| | | |
|---|---|---|
| 6.2 | **No Liability for Tax Claims.** | 23 |
| 6.3 | **Vesting.** | 23 |
| 6.4 | **Retention and Enforcement of Claims or Equity Interests.** | 23 |
| 6.5 | **Conditional Release of IWA** | 24 |

**ARTICLE 7** ....... 24

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES... 25**

| | | |
|---|---|---|
| 7.1 | **Assumption and Rejection of Executory Contracts and Unexpired Leases.** | 25 |
| 7.2 | **Cure.** | 25 |
| 7.3 | **Damages Upon Rejection.** | 25 |

**ARTICLE 8** ....... 26

**EFFECTUATION AND SUPERVISION OF THE PLAN** ....... 26

| | | |
|---|---|---|
| 8.1 | **Jurisdiction.** | 26 |
| 8.2 | **General Retention.** | 26 |
| 8.3 | **Specific Purposes.** | 26 |

**ARTICLE 9** ....... 28

**CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS ... 28**

| | | |
|---|---|---|
| 9.1 | **Conditions to Confirmation.** | 28 |
| 9.2 | **Conditions to Effectiveness.** | 28 |
| 9.3 | **Waiver.** | 28 |

**ARTICLE 10** ....... 28

**ACCEPTANCE OR REJECTION OF PLAN** ....... 29

| | | |
|---|---|---|
| 10.1 | **Each Impaired Class Entitled to Vote Separately.** | 29 |
| 10.2 | **Class Acceptance Requirement.** | 29 |
| 10.3 | **Cramdown.** | 29 |

**ARTICLE 11** ....... 29

**MISCELLANEOUS PROVISIONS** ....... 29

| | | |
|---|---|---|
| 11.1 | **Revocation of Plan.** | 29 |
| 11.2 | **Headings.** | 29 |
| 11.3 | **Due Authorization by Holders of Claims.** | 30 |
| 11.4 | **Time.** | 30 |
| 11.5 | **Transactions on Business Days.** | 30 |
| 11.6 | **Payment on Distribution Dates.** | 30 |
| 11.7 | **Fractional Dollars.** | 30 |
| 11.8 | **Unclaimed or De Minimis Distributions.** | 30 |
| 11.9 | **Modification of Payment Terms.** | 31 |
| 11.10 | **Entire Agreement.** | 31 |
| 11.11 | **Confirmation Order.** | 31 |
| 11.12 | **Further Authorizations.** | 31 |
| 11.13 | **Exemption from Securities Laws.** | 31 |
| 11.14 | **Transfer Taxes.** | 32 |
| 11.15 | **Recordable Order.** | 32 |
| 11.16 | **Governing Law.** | 32 |
| 11.17 | **Severability.** | 32 |
| 11.18 | **No Interest.** | 32 |
| 11.19 | **No Attorneys' Fees.** | 32 |
| 11.20 | **Consent to Jurisdiction.** | 33 |

**11.21** **Setoffs**. ................................................................................................................ **33**
**11.22** **Successors and Assigns**. ........................................................................................ **33**
**11.23** **Reservation**. ........................................................................................................... **33**
**ARTICLE 12** ............................................................................................................................ **33**
    **MODIFICATION OF PLAN** ............................................................................................. **33**
    **12.1** **Modification of Plan**. ........................................................................................... **33**
    **12.2** **Notices**. ................................................................................................................. **34**

## INTRODUCTION

Debtor, Hubbard Properties, LLC (the "<u>Debtor</u>") proposes the following amended plan of reorganization (as may be further amended from time to time, and including all addenda, exhibits, schedules, and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference, the "<u>Plan</u>"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (defined in Section 1.11 below).

For a discussion of the Debtor's history, business, operations, assets, and liabilities and for a summary and analysis of the Plan, reference should be made to the *Amended Disclosure Statement in Connection with Amended Plan of Reorganization for Hubbard Properties, LLC*, dated November 15, 2011 (as amended, the "<u>Disclosure Statement</u>"). The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. The original *Plan of Reorganization of Hubbard Properties, LLC* (Doc. No. 82) and *Disclosure Statement in Connection with Plan of Reorganization of Hubbard Properties, LLC* (Doc. No. 83), previously filed in this Bankruptcy Case have been withdrawn. This amended Plan and the corresponding amended Disclosure Statement supersede and fully replace the original versions, and are intended to incorporate certain consensual settlements among the Debtor and certain creditors, and address certain other issues that have arisen in this Bankruptcy Case in the interim.

## ARTICLE 1
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in interpreting the Plan.

1.1     "<u>Administrative Convenience Claim</u>" means any Allowed Unsecured Claim (a) that is in an amount of $500.00 or less or (b) Allowed in an amount greater than $500.00 but whose Holder elects to reduce such Allowed Unsecured Claim to be $500.00.

1.2     "<u>Administrative Expense</u>" means (a) any cost or expense of administration of the Reorganization Case under Sections 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case on or before the applicable Administrative Expense Claims Bar Date or other applicable deadline established by the Bankruptcy Court, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor-in-Possession in the

ordinary course of its business, (iii) any payment required to be made to cure a default under an assumed contract, including any cure claim, to the extent Allowed by a Final Order of the Bankruptcy Court, (iv) any Claim granted administrative expense priority status by a Final Order of the Bankruptcy Court, (v) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues post-petition, and (vi) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Bankruptcy Code § 330(a) or § 331 (including any amounts held back pursuant to an order of the Bankruptcy Court); and (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

1.3    "<u>Administrative Expense Claim</u>" means any Allowed Claim for the payment of any Administrative Expense.

1.4    "<u>Administrative Expense Claims Bar Date</u>" means, unless otherwise ordered by the Bankruptcy Court, the day established by the Federal Rules of Bankruptcy Procedure as the last day for filing an application or other Bankruptcy Court-approved pleading for an Administrative Expense Claim.

1.5    "<u>Aegon</u>" means AEGON USA Realty Advisors, Inc., the servicing agent of IWA, and all affiliates, predecessors, or successors.

1.6    "<u>Affiliate</u>" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

1.7    "<u>Allowed</u>" means and includes, with respect to any Claim or Equity Interest, (a) any Claim (other than a Disputed Claim) or Equity Interest, proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) or Equity Interest that is listed in the Schedules as liquidated in the amount and not disputed or not Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (2) the Claim or Equity Interest has been Allowed by a Final Order of the Bankruptcy Court (but only to the extent so Allowed).

1.8    "<u>Allowed Amount</u>" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order.  No amount shall be Allowed for or on account of punitive damages, penalties, or post-petition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

1.9    "<u>Anniversary Date</u>" means the calendar date (or first business day thereafter) that falls one year after the Effective Date and the same calendar date (or first business day thereafter) of each succeeding calendar year.

1.10    "Avoidance Action" means a Cause of Action which any Debtor may assert under Section 541, 542, 543, 544, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

1.11    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 1101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.12    "Bankruptcy Court" means either the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.13    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.14    "BP Claim" means the claim asserted by the Debtor against BP Gulf Coast Claims Facility for damages sustained by the Debtor as a result of the Deepwater Horizon Oil Spill.

1.15    "BP Claim Proceeds" means the net proceeds received by the Debtor as a recovery or result of the BP Claim, less all costs of collection, inclusive of all reasonable attorneys' fees, consulting fees, and costs.

1.16    "Business Day" means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.17    "Cash" means lawful currency of the United States of America and its equivalents.

1.18    "Cash Collateral" shall have the meaning ascribed in Section 363(a) of the Bankruptcy Code.

1.19    "Cash Collateral Order" means one or more interim and/or final Orders of the Bankruptcy Court pursuant to which the Debtor was authorized to use Property that constitutes Cash Collateral.

1.20    "Causes of Action" means any and all of the Debtor's or the Estate's actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether known or unknown, in law, equity, or otherwise, including (a) all Avoidance Actions; and (b) any and all other claims or rights of the Debtor of any value whatsoever, at law or in equity, against any Creditor or other third party.

1.21    "Claim" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

1.22    "Class" means a category of Holders of Claims or Equity Interests as set forth in Article 4 of the Plan.

1.23    "Confirmation" or "Confirmation of the Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

1.24    "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

1.25    "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of the Plan.

1.26    "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.27    "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.28    "Creditor" shall have the meaning ascribed to such term in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtor or Holder of any Claim against Property of the Debtor as set forth in Section 102(2) of the Bankruptcy Code.

1.29    "Debtor-In-Possession" means the Debtor in its capacity as provided under Section 1101(1) of the Bankruptcy Code, and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.30    "Debtor" means Hubbard Properties, LLC.

1.31    "DIP Financing" means any agreement, document, loan, or other arrangement approved by the Bankruptcy Court, by which the Debtor may have obtained post-petition financing pursuant to Section 364 of the Bankruptcy Code prior to or as of the Effective Date, and any related loan or security documents.

1.32    "DIP Financing Claim" means any Claim existing under any DIP Financing.

1.33    "Disclosure Statement" means the Disclosure Statement (including all annexes, exhibits, and schedules attached thereto or referenced therein), as such Disclosure Statement may be amended or modified from time to time for Plan approval, whether conditional or final, by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.34    "Disclosure Statement Hearing Order" means one or more Orders of the Bankruptcy Court approving the  Disclosure Statement as containing "adequate information," as being otherwise in accordance with Section 1125 of the Bankruptcy Code, and scheduling such deadlines, hearings, and addressing other matters as the Bankruptcy Court may deem appropriate.

1.35    "Disputed Claim" means a Claim that has not been Allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court, or (3) granted in whole or part by a Final Order of the Bankruptcy Court, and a Claim shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if (A) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent, or unliquidated or (B) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

1.36    "Disputed Claims Reserve" means the reserve of Cash to be established on and maintained following the Effective Date by the Reorganized Debtor in an amount sufficient to satisfy payments on account of any Disputed Claims that have not been withdrawn or determined as of the Effective Date, and subsequently any Distribution Date.

1.37    "Distribution" means the Distribution in accordance with this Plan of Cash or other Property, as the case may be.

1.38    "Distribution Date," means, as context requires, the date (a) for payments to be made on the Effective Date or (b) such other dates upon which Distributions of Property are to occur under the Plan.

1.39    "District Court" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

1.40    "Effective Date" means, and shall occur on, the first (1st) Business Day that is fifteen (15) days following the entry of the Confirmation Order and upon which all of the conditions to occurrence of the Effective Date contained in Section 9 of the Plan have been satisfied or waived by the Debtor.

1.41    "Entity" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

1.42    "Equity Interest(s)" means any equity interest in the Debtor held by the Members.

1.43    "Estate" means the estate created pursuant to Section 541 of the Bankruptcy Code.

1.44    "Estimated Amount" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against a Debtor which is Contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for

Confirmation of the Plan pursuant to Section 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Section 1129(b)(1) and (2) of the Bankruptcy Code.

1.45 "Estimation Order" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of a Claim against the Debtor.

1.46 "Excess Cash Flow" means the Debtor's net operating cash flow measured annually as of December 31st of each calendar year, less (a) the payments due on the IWA Note A and IWA Note B less (b) all Reserves as provided in this Plan and the Projections, and exclusive of (i) any Exit Funding, (ii) all payments to be made on the Effective Date, and (iii) all monthly or otherwise recurring payments to be made pursuant to the Plan on account of Allowed Claims.

1.47 "Excess Cash Flow Payment" means an annual payment to be made by the Reorganized Debtor equal to sixty percent (60%) of the Debtor's Excess Cash Flow calculated as of December 31st and each calendar year following the Effective Date.

1.48 "Exit Cash" means all Cash available to the Debtor on the Effective Date, inclusive of all Cash from operations maintained in the Debtor's operating accounts, any unused funds or proceeds from any DIP Financing or from any Exit Funding as of the Effective Date.

1.49 "Exit Funding" means any Cash and/or loans, loans commitments, or other advances to be made by some or all of the Members or affiliated entities conditioned upon the occurrence of the Effective Date.

1.50 "Final Order" means an Order, the implementation, operation, or effect of which has not been stayed and as to which Order (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.51 "Governmental Unit" means any foreign, provincial, federal, state, local, or municipal (a) government, (b) governmental agency, (c) governmental commissions, (d) governmental department, (e) governmental bureau, (f) governmental ministry, and/or (g) governmental entity.

1.52 "Holder" means an Entity holding a Claim or Equity Interest.

1.53 "Impaired" means impaired within the definition of Section 1124 of the Bankruptcy Code.

1.54 "IWA" means Investors Warranty of America, Inc.

1.55 "IWA Claim" means any Claim of IWA based on the IWA Loan or IWA Loan Documents to the extent such Claim is an Allowed Claim.

1.56 "<u>IWA Collateral</u>" means any property or interest in property of the Debtor or the Estate that is subject to a Lien to secure payment of the IWA Loan to the extent (a) such Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law and (b) such Lien continues in property of the Debtor acquired after the Petition Date as provided under Section 552(b)(2) of the Bankruptcy Code.

1.57 "<u>IWA Contract Rate</u>" means the per annum rate of interest which is equal to 180 basis points over the one-month LIBOR rate, as reported by the *Wall Street Journal* on the last business day of the calendar month prior to the Effective Date.

1.58 "<u>IWA Deficiency Claim</u>" means any Allowed Unsecured Claim of IWA arising (a) under Section 1111(b)(1)(A) of the Bankruptcy Code or (b) from an agreement or a determination that (i) the Allowed IWA Claim is recourse against the Debtor or (ii) the value of the IWA Collateral securing the Allowed IWA Claim is less than the total amount of the Allowed IWA Claim.

1.59 "<u>IWA Election</u>" means any timely election made by IWA pursuant to Section 1111(b)(2) of the Bankruptcy Code.

1.60 "<u>IWA Loan</u>" means that certain pre-petition loan as evidenced by the IWA Loan Documents.

1.61 "<u>IWA Loan Documents</u>" means those documents including, without limitation, that certain documents evidencing the IWA Loan including mortgages, security agreements,, promissory notes, and other instruments executed by the Debtor in favor of Transamerica Financial Life Insurance Company as purportedly assigned to IWA.

1.62 "<u>IWA Note A</u>" means a promissory note to be delivered on the Effective Date by the Debtor to the Holder of the Allowed IWA Claim in a principal amount that shall be the lesser of (i) the value of the IWA Collateral as (a) established by agreement between the Debtor and the Holder of the IWA Claim or (b) determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Rule 3012 of the Bankruptcy Rules, or (ii) $17,000,000.

1.63 "<u>IWA Note B</u>" means a promissory note to be delivered on the Effective Date by the Debtor to the Holder of the Allowed IWA Claim in a principal amount that shall be equal to the difference, if any, between (i) the value of the IWA Collateral as (a) established by agreement between the Debtor and the Holder of the IWA Claim or (b) determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Rule 3012 of the Bankruptcy Rules, and (ii) the principal amount of IWA Note A, except that in the event that the Holder of the IWA Claim timely makes an IWA Election, the principal amount of IWA Note B shall be established as provided in Section 4.3.4 of the Plan.

1.64 "<u>IWA Secured Claim</u>" means that portion of the Allowed IWA Claim that is a Secured Claim.

1.65    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code shall not constitute a Lien.

1.66    "Members" means Lorraine W. Hubbard, Lorraine W. Hubbard as Trustee of the Wilson M. Hubbard Trust, Patricia Hubbard, Kathleen H. McDole, Michael E. Hubbard, Mark F. Hubbard, Jeffrey W. Hubbard, Thomas C. Hubbard, and Jacqueline M. Hubbard.

1.67    "OCB Administrative Claims" means those Allowed Expense Claims entitled to priority under Section 507(a)(2) and 503(b)(1) that arise and are incurred by the Debtor in the ordinary course of the operation of its business and represent liabilities incurred after the Petition Date.

1.68    "Order" means an order or judgment of a court.

1.69    "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.70    "Petition Date" means January 27, 2011.

1.71    "Plan" means this Chapter 11 plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.72    "Plan Documents" means any documents, attachments, and exhibits, as the same may be amended, modified, or supplemented from time to time that aid in effectuating the Plan, which documents, attachments, and exhibits that may be filed by the Debtor with the Bankruptcy Court.

1.73    "Priority Claim" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

1.74    "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.75    "Projections" means those pro forma financial projections attached as **Exhibit "C"** to the Disclosure Statement, as may be supplemented, amended, or modified prior to or at the Confirmation Hearing.

1.76    "Pro Rata" or "Pro Rata Share" means the same proportion or ratio that an Allowed Claim in a particular Class bears to the total amount of all Allowed Claims in such Class or Classes as provided under the Plan.

1.77 "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001 or 3002.

1.78 "Property" means "property of the estate" as set forth in Section 541 of the Bankruptcy Code.

1.79 "Reorganization Case" or "Bankruptcy Case" means the above-captioned Chapter 11 case for the Debtor that was filed on the Petition Date.

1.80 "Reorganized Debtor" means the Debtor as of and following the Effective Date.

1.81 "Reserves" means those capital expenditures, property tax, tenant improvements, or other reserves identified in the Projections or that otherwise may be deemed advisable or necessary by the Debtor or Reorganized Debtor.

1.82 "Schedules" means the Schedules, Statements, and Lists filed by the Debtor with the Bankruptcy Court in the Reorganization Case pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.83 "Section 503(b)(9) Claim" means any timely filed and Allowed Administrative Expense Claim for the unpaid value of any goods (but not for the value of any services) actually received by the Debtor within twenty (20) days prior to the Petition Date if sold to the Debtor in the ordinary course of business of the Debtor.

1.84 "Secured Claim" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the Property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.85 "Setoff" means any right of a Creditor to offset a mutual debt owing by such Creditor and any right of the corresponding Debtor to offset a mutual debt owing by a Debtor to a Creditor against a Claim of that Debtor, including, without limitation, such rights under Section 553 of the Bankruptcy Code.

1.86 "Statutory Fees" means any fees or charges assessed against the Debtor's Estate under Section 1930, Chapter 12 of Title 28 of the United States Code.

1.87 "Tenant Leases" means any lease of any portion of the Debtor's Property existing as of the Petition Date or entered into and approved by the Bankruptcy Court subsequent to the Petition Date.

1.88 "Unimpaired" means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.89    "Unsecured Claim" means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to:  (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.90    "Unsecured Payment Fund" means the amount of (a) $96,000 to be paid following the Effective Date on account of an Allowed Class 6 Unsecured Claims, plus forty percent (40%) of the BP Claim Proceeds.

# ARTICLE 2
# TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

2.1    Administrative Expense Claims.

2.1.1    Administrative Expense Claims shall include, among other amounts entitled to administrative status under 11 U.S.C. 503, (i) the costs and expenses incurred in the operation of the business of the Debtor ("OCB Administrative Claims"), (ii) Allowed Claims for reasonable fees and out of pocket expenses of professionals retained in the Reorganization Case with the approval of the Bankruptcy Court, including counsel for Debtor, and Debtor's financial advisors ("Professional Fee Claims"), and (iii) Administrative Expense Claims Allowed under Section 503(b)(9).

(1)    Except as provided below, each Holder of an Administrative Expense Claim shall, in full and final satisfaction of such Allowed Administrative Expense Claim, be paid on the later to occur of (a) the Effective Date or (b) the date on which an Administrative Expense Claim shall become an Allowed Claim: (i) in full, in Cash, the amount of such Allowed Administrative Expense Claim, or (ii) in such other amount and on such other terms and conditions as may be agreed between the Holder of such Administrative Expense Claim and the Debtor.

(2)    Any timely filed and Allowed Section 503(b)(9) Claim shall be paid (i) in full, in Cash, the amount of such Allowed 503(b)(9) Claim, or (ii) in such other amounts and such other terms and conditions as may be agreed between the Holder of such 503(b)(9) Claim and the Debtor provided that (a) an application for allowance of such 503(b)(9) Claim shall have been filed by the deadline established by the Bankruptcy Court (b) the amount asserted as a Section 503(b)(9) Claim has not been otherwise paid prior to the Effective Date, and (c) any amounts paid on account of an Allowed 503(b)(9) Claim shall reduce the Allowed amount of any Unsecured Claim asserted by the Holder of the 503(b)(9) Claim.

(3)     Allowed and uncontested OCB Administrative Claims representing post-petition liabilities shall be paid by the Debtor in the ordinary course of its business in accordance with the terms and conditions of the particular transactions relating thereto during the Reorganization Case, pursuant to any Interim and Final Cash Collateral Orders without need for application and allowance under Section 503.

(4)     Administrative Expense Claims are not classified and are to be treated in accordance with the Bankruptcy Code and the Holders of Administrative Expense Claims are not entitled to vote on the Plan.

2.2     <u>DIP Financing Claims</u>.

2.2.1    Any DIP Financing Claims shall be paid on the Effective Date from the Exit Cash, new Equity Interests in the Reorganized Debtor issued pursuant to the Plan, or as may be otherwise agreed between the Debtor and the Holders of the DIP Financing Claim.

2.3     <u>Priority Tax Claims</u>.

2.3.1    Priority Tax Claims are Claims of Governmental Units for taxes that are not Secured Claims and are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.3.2    Allowed Priority Tax Claims will be paid in full, in Cash, the later of: (a) the Effective Date; (b) the date of the Order allowing such Claim; or (c) the date that such Allowed Priority Tax Claim would have been due if the Reorganization Case had not been commenced; provided, however, that the Debtor may, at its option, in lieu of payment in full of Allowed Priority Tax Claims on the Effective Date, make deferred Cash payments with the principal amount of such Allowed Priority Tax Claims amortized and payable in equal annual installments over five (5) years from the order of relief, and in such case interest shall accrue on the unpaid balance commencing on the Effective Date.

2.3.3    Priority Tax Claims are not classified, are to be treated as required by the Bankruptcy Code, and the Holders of such Claims are not entitled to vote on the Plan.

## ARTICLE 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims other than Allowed Administrative Expense Claims and Allowed Priority Tax Claims are classified for all purposes pursuant to this Plan as follows:

3.1     <u>Class 1 – Unsecured Priority Claims</u>.

Class 1 consists of all Priority Claims against the Debtor, which are entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

3.2     <u>Class 2 - Secured Tax Claim of Pinellas County Tax Collector</u>.

Class 2 consists of the Allowed Secured Tax Claims of the Pinellas County Tax Collector for real and tangible personal property taxes for 2011.

3.3     <u>Class 3 – IWA Secured Claim</u>.

Class 3 consists of the portion of the Allowed Claim of IWA that is a Secured Claim secured by a valid, perfected, and unavoidable Lien on the IWA Collateral.

3.4     <u>Class 4 – Tenant Loan Secured Claims</u>.

3.4.1   Class 4(A) consists of the Allowed Secured Claim of Butterfield Bros., LLC to the extent secured by a right of setoff under Section 553 of the Bankruptcy Code and a pledge of the recovery of the BP Claim pursuant to a certain Memorandum of Indebtedness.

3.4.2   Class 4(B) consists of the Allowed Secured Claim of Nagasti, Inc. to the extent secured by a right of setoff under Section 553 of the Bankruptcy Code and a pledge of the recovery of the BP Claim pursuant to a certain Memorandum of Indebtedness.

3.5     <u>Class 5 – Administrative Convenience Claims</u>.

Class 5 consists of (i) the Holders of Allowed Unsecured Claims in an amount of Five Hundred Dollars ($500.00) or less, and (ii) the Holders of Claims who elect to reduce such Claims to Unsecured Claims in an amount of Five Hundred Dollars ($500.00).

3.6     <u>Class 6 – General Unsecured Claims</u>.

Class 6 consists of all Unsecured Claims not otherwise separately classified.

3.7     <u>Class 7 – IWA Deficiency Claim</u>.

Class 7 consists of any unsecured IWA Deficiency Claim arising from a determination that the aggregate value of the IWA Collateral is less than the total amount of the Allowed IWA Claim to the extent IWA does not timely make the IWA Election.

3.8    Class 8 – Equity Interests.

Class 8 shall consist of all existing Equity Interests in the Debtor.

3.9    Extent of Classification. A Claim is placed in a particular Class only to the extent such Claim falls within the description of that Class and only to the extent such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date. A Claim may be, and is, classified in other Classes to the extent any portion of the Claim falls within the description of such other Classes. Prior to the voting deadline established by order of the Bankruptcy Court, the Debtor shall seek an order determining the foregoing classifications of creditors and equity interests pursuant to Rule 3013 of the Bankruptcy Rules.

# ARTICLE 4
## TREATMENT OF ALLOWED CLAIMS AND INTERESTS

The following treatment of Allowed Claims and Equity Interests pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of such respective Claims and Equity Interests.

4.1    Class 1 – Priority Claims

4.1.1    **Treatment.**

Except as otherwise provided below, each Holder of an Allowed Priority Claim in this Class shall receive, in full satisfaction, settlement, release and discharge thereof, Cash equal to the amount of such Allowed Priority Claim on the later of: (i) the Effective Date or as soon thereafter as practical; or (ii) the date upon which there is a Final Order allowing such Claim as an Allowed Priority Claim (or any other date specified in such Final Order) or as soon thereafter as practical, unless the Holder of an Allowed Priority Claim and the Debtor (or Reorganized Debtor) agree to a less favorable treatment.

4.1.2    **Impairment and Voting.**

Priority Claims are Unimpaired. The Holders of such Claims are not entitled to vote on the Plan.

4.2    Class 2 - Secured Claim of Pinellas County Tax Collector.

4.2.1    **Treatment.**

The Allowed Secured Tax Claims of the Pinellas County Tax Collector for real and tangible personal property taxes for 2011 will be paid on or before March 31, 2012. The Debtor reserves all rights to pursue any available challenges to any valuation or assessment available under law upon receipt of the actual TRIM notice for 2011 taxes.

### 4.2.2 Impairment and Voting.

Class 2 is Unimpaired and is not entitled to vote under the Plan.

4.3    Class 3 – IWA Secured Claim

### 4.3.1 Determination of Secured Status.

The amount of the Allowed IWA Secured Claim shall be equal to the value of the IWA Collateral (a) as stipulated between the Debtor and IWA or (b) as determined by the Bankruptcy Court, pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 prior to or in conjunction with the Confirmation Hearing.

### 4.3.2 Treatment.

The IWA Secured Claim shall be satisfied through the Debtor's delivery of the IWA Note A and IWA Note B on the Effective Date.

### 4.3.3 Material Terms and Conditions of IWA Note A.

The material terms and conditions of IWA Note A shall be as follows:

Original Principal Amount:  The original principal amount of the IWA Note A shall be established as provided in Section 1.62 of this Plan.

Interest Rate:  A fixed interest rate equal to (i) the IWA Contract Rate as of the Effective Date through the first Anniversary Date, (ii) four percent (4%) per annum from the first Anniversary Date through the fifth Anniversary Date, and then (iii) five and one-quarter percent (5.25%) per annum thereafter.

Payment Term of IWA Note A:  The IWA Note A shall provide for monthly payments of interest only for the first 60 months following the Effective Date.  Unless the Holder of the IWA Claim makes an 1111(b) election, on the fifth Anniversary Date, any outstanding principal balance remaining on the IWA Note B shall be added to the outstanding principal balance of the IWA Note A and the entire cumulative balance shall be paid through monthly payments of principal and interest thereafter based on a 25-year amortization schedule with a balloon payment of all principal and accrued interest due on the tenth Anniversary Date.

### 4.3.4 Material Terms and Conditions of IWA Note B.

The material terms and conditions of IWA Note B shall be as follows:

Original Principal Amount:  The original principal amount of IWA Note B shall be established as provided in Section 1.63 of this Plan.

Interest Rate:  The IWA Note B shall be a fixed interest rate of 5.25% per annum subject to upward or downward adjustment to the extent that the Bankruptcy Court determines that another fixed interest rate is required to provide that the total deferred cash payments (inclusive of Excess Cash Flow Payments paid to the Holder of the IWA Claim) have a value as of the Effective Date equal to the Allowed Amount of the IWA Secured Claim in the event that the Holder of the IWA Secured Claim does not accept the Plan and the Plan must be confirmed pursuant to Section 1129(b).

Payment of IWA Note B:  The IWA Note B shall provide for (i) monthly payments of interest only for the 60 months following the Effective Date, plus any Excess Cash Flow payments made within 20 days of the first through fifth Anniversary Dates, which shall be credited to reduce the principal amount of IWA Note B.  Unless the Holder of the IWA Claim makes an 1111(b) election, on the fifth Anniversary Date, the entire outstanding principal balance of IWA Note B shall be added to the principal balance of IWA Note A and paid as provided in Section 4.3.3 above.

### 4.3.5 **Liens**.

IWA shall retain any Liens(s) on the IWA Collateral securing the IWA Claim, up to the Allowed Amount of the IWA Secured Claim and only to the same extent, validity, and priority as existed on the Petition Date but not on any property acquired by the Debtor subsequent to the Petition Date except to the extent such Lien would continue in such property pursuant to Section 552(b)(2) of the Bankruptcy Code.

### 4.3.6 **1111(b) Election**.

In the event IWA makes a valid and timely IWA Election, then the terms of the IWA Note B shall be modified so that (i) the original principal balance of IWA Note B shall be the amount that is equal to the difference between (a) the Allowed Amount of the Allowed IWA Claim, as determined by the Bankruptcy Court subject to all objections, setoffs, and counterclaims as provided in Sections 4.3.7 and 6.4 of this Plan and (b) the original principal amount of IWA Note A; (ii) the monthly and Excess Cash Flow payments that would otherwise be applied to interest and principal on IWA Note B will be applied exclusively to principal; (iii) the IWA Note B shall not bear interest; and (iv) the payment term of IWA Note B will be extended until the principal balance of IWA Note B is paid in full.

In the event IWA makes a timely IWA Election, in addition to the modifications to IWA Note A described in the preceding paragraph, the interest rate payable on IWA Note A will be reduced so that the sum of the total cumulative deferred cash payments received by the Holder of the IWA Claim under the terms of IWA Note A and IWA Note B equals the total amount of the Allowed IWA Claim and has a value, as of the Effective

Date, that is equal to the value of the IWA Collateral on the Effective Date as determined by the Bankruptcy Court or pursuant to agreement between the Debtor and IWA.

### 4.3.7 **Conditional Release of IWA**.

In the event (i) the Plan is confirmed pursuant to Section 1129(a) of the Bankruptcy Code with the acceptance of the Plan by the affirmative vote(s) of the Holder of the IWA Claim in and with respect to all impaired classes in which the Holder of the IWA Claim is or may be entitled to vote to accept or reject the Plan and (ii) the Holder of the IWA Claim waives any right to Distribution on account of any IWA Deficiency Claim, then the confirmation of the Plan and entry of the Confirmation Order shall be deemed a compromise and release by the Debtor of any and all claims against IWA, Aegon, and their affiliates as more fully described in Section 6.5 of this Plan. In the event the Holder of the IWA Claim objects to or does not accept the Plan by the affirmative vote(s) in and with respect to all Impaired Classes in which the Holder of the IWA Claim is or may be entitled to vote or does not waive any right to Distribution on account of any IWA Deficiency Claim, then confirmation of the Plan shall not constitute a release or compromise of any claim of or by the Debtor, the Reorganized Debtor, and any party claiming by or through the Debtor or the Reorganized Debtor against IWA, Aegon, and their Affiliates and such claims shall be retained and may be enforced to the full extent provided under Section 6.4 of this Plan and may be brought by the Debtor or Reorganized Debtor in any action or proceeding in a court of competent jurisdiction including, without limitation, in connection with any objection to the IWA Claim or adversary proceeding seeking the subordination for purposes of Distribution or otherwise of some or all of the IWA Claim pursuant to Section 510 of the Bankruptcy Code or other applicable law.

### 4.3.8 **Impairment and Voting**.

Class 3 is Impaired under the Plan and the Holder of the IWA Claim is entitled to vote to accept or reject the Plan.

## 4.4 Class 4 – Secured Tenant Loan Claims

### 4.4.1 **Treatment**.

Class 4(A) - Butterfield Bros., LLC ("Butterfield") - The Allowed Class 4(A) Secured Claim of Butterfield shall be paid within 30 days of receipt of the BP Claim Proceeds from the BP Claim Proceeds with interest accruing at the Prime Rate effective as of the date of payment. Butterfield shall retain its rights to setoff of the amount of the Class 3(B) Claim at a rate of $1,000 per month from the rent to be paid by Butterfield pursuant to its Lease with the Debtor in the event the BP Claim Proceeds are not received by the first Anniversary Date.

Class 4(B) - Nagasti, Inc. ("Nagasti") - The Allowed Class 4(B) Secured Claim of Nagasti shall be paid within 30 days of receipt of the BP Claim Proceeds from the BP Claim Proceeds with interest accruing at the Prime Rate effective as of the date of payment.  Nagasti shall retain its rights to setoff of the amount of the Class 4(B) Claim at a rate of $1,000 per month from the rent to be paid by Nagasti pursuant to its Lease with the Debtor in the event the BP Claim Proceeds are not received by the first Anniversary Date.

### 4.4.2 **Impairment and Voting**.

Class 4(A) and Class 4(B) are Impaired under the Plan and the Holders of the Class 4(A) Claim and the Class 4(B) Claim are entitled to vote to accept or reject the Plan.

## 4.5 Class 5 – Administrative Convenience Claims.

### 4.5.1 **Treatment**.

The Reorganized Debtor shall pay the Holders of Allowed Administrative Convenience Class Claims Cash equal to fifty percent (50%) of their Allowed Class 5 Claim within thirty (30) days after the Effective Date in full satisfaction of claims.

### 4.5.2 **Impairment and Voting**.

Class 5 is Impaired by the Plan.

## 4.6 Class 6 – General Unsecured Claims.

### 4.6.1 **Treatment**.

Holders of Allowed Class 6 Unsecured Claims (excluding Holders of Allowed Class 6 Unsecured Claims that are Affiliates of the Debtor) shall receive in full satisfaction of such Holder's Allowed Unsecured Claim (i) within ten (10) Business Days of the Effective Date a payment equal to such Holder's Pro Rata Share of the Unsecured Payment Fund and (ii) within thirty (30) days of the Debtor's receipt of the BP Claim Proceeds an additional Distribution equal to such Holder's Pro Rata Share of forty percent (40%) of the BP Claim Proceeds.

### 4.6.2 **Alternative Treatment**.

Any Holder of an Allowed Class 6 Unsecured Claim may elect, by indicating on a ballot or other writing acceptable to the Debtor to receive the same treatment on account of such Allowed Unsecured Claim as provided to the Holder of the IWA Deficiency Claim as provided in Section 4.7.1 of the Plan.

### 4.6.3  Calculation of Pro Rata Share.

In calculating the Pro Rata Share to be paid to the Holder of an Allowed Class 6 Unsecured Claim, such Pro Rata Share shall be based on a fraction, the numerator of which shall be the Allowed amount of such Holder's Class 6 Claim and the denominator of which shall be the total amount of Allowed Class 6 Claims.  In the event, the Holder of the IWA Deficiency Claim elects to receive the same treatment as the Holders of Allowed Class 6 Claims, the Pro Rata Share of the Unsecured Payment Fund and BP Claim Proceeds shall be based on a fraction, the numerator of which shall be the Allowed amount of such Holder's Class 6 Claim and the denominator of which shall be the total amount of Allowed Class 6 Claims plus the amount of the Allowed IWA Deficiency Claim (except to the extent that some or all of the IWA Claim may be subject to setoff or subordination pursuant to Section 510(c) or other applicable law).

### 4.6.4  Impairment and Voting.

Class 6 is Impaired under the Plan and the Holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

## 4.7  Class 7 – IWA Deficiency Claim.

### 4.7.1  Treatment.

In the event that IWA (i) does not make the IWA Election or (ii) does not waive any right to Distribution on account of the IWA Deficiency Claim, IWA will be paid in annual installments equal to the Excess Cash Flow Payment with the first payment to be made on the sixth Anniversary Date of the Effective and continuing on the Anniversary Date of each succeeding year until the earlier of (a) the date that the Allowed IWA Deficiency Claim is paid in full or (b) June 30, 2021.  Alternatively, IWA may elect, by indicating on a ballot or other writing acceptable to the Debtor to receive the same treatment on account of any Allowed IWA Deficiency Claim as provided to the Holders of allowed Class 6 Unsecured Claims under Section 4.6.1 of the Plan, any IWA Deficiency Claim (after determination of all applicable setoffs, offsets, or subordination pursuant to Section 510 of the Bankruptcy Code or other applicable law to the extent IWA does not accept the Plan).

### 4.7.2  Setoff.

Subject to the conditional release contemplated under Sections 4.3.7 and 6.5 of the Plan and without limiting the applicability of Sections 502(d), 510(c), and 553 of the Bankruptcy Code, any debt owed by or determined to be owed by IWA, Aegon, or any affiliate, predecessor, or successor may be setoff against the IWA Deficiency Claim to the full extent provided under Section 553 of the Bankruptcy Code and any other applicable law.

### 4.7.3 **Impairment and Voting**.

Class 7 is Impaired under the Plan and the Holders of a Class 7 Claim are entitled to vote to accept or reject the Plan.

### 4.8 Class 8 – Equity Interests.

#### 4.8.1 **Treatment**.

All existing Equity Interests in the Debtor shall be cancelled as of the Effective Date and new membership interests representing one hundred percent (100%) of the membership interests in the Reorganized Debtor shall be issued to persons or entities that provided the Exit Funding.

#### 4.8.2 **Impairment and Voting**.

Class 8 is Unimpaired and is deemed to have accepted the Plan.

**ARTICLE 5**
**MEANS FOR EXECUTION OF PLAN**

### 5.1 Plan Funding.

The Debtor will fund payments to be made under the Plan through the following: (1) Cash on hand on the Effective Date, (2) the Exit Funding, (3) collections from the BP Claim, or (4) Cash generated and/or collected by the Reorganized Debtor in the ordinary course of business on and after the Effective Date.

### 5.2 Funding of Operations.

The Reorganized Debtor's operations will be funded by Cash generated from operations and supplemented to the extent necessary by the Exit Funding.

### 5.3 Management of the Reorganized Debtor

On or after the Effective Date, the business and affairs of the Reorganized Debtor shall be managed by the members of the Reorganized Debtor. Day to day property management services will be provided by a property management company selected by the Debtor.

### 5.4 Continued Corporate Existence.

The Reorganized Debtor will continue to exist after the Effective Date as a corporate entity with all of the powers of a corporation under applicable law in the jurisdiction(s) in which the Debtor is organized or otherwise formed and pursuant to its articles of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents

are amended by or pursuant to the Plan or pursuant to any amended articles of incorporation or amended bylaws.

5.5     Corporate Action.

All matters provided for under the Plan and/or the Plan Documents involving the organizational structure of the Debtor or action to be taken by, or required of the Debtor, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the members of any such entities.

5.6     Payments of Claims and Equity Interests.

Except where the Plan contemplates deferred payment, delivery of securities, or some other form of Distributions of Property to be made by the Reorganized Debtor pursuant to the Plan, payments shall be made in Cash, by check, or by wire transfer.

5.7     Addresses for Distributions to Holders of Allowed Claims.

Unless otherwise provided in the Plan, the Plan Documents, or a Final Order of the Bankruptcy Court, Distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules.  Neither the Debtor nor the Reorganized Debtor shall be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

5.8     Disputed Claims.

5.8.1   **Objection Deadline**.  As soon as practicable, but in no event later than sixty (60) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida.

5.8.2   **Prosecution of Objections**.  On and after the Effective Date, the Reorganized Debtor shall have the authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims.

5.8.3   **Establishment and Maintenance of Reserve for Disputed Claims.**

The Reorganized Debtor shall maintain the Disputed Claims Reserve equal to the aggregate of any distributable amounts of Cash to which Holders of Disputed Claims would then be entitled under this Plan if such Disputed Claims were Allowed Claims in the amount of such Disputed Claim or in such amount as may be estimated by the

Bankruptcy Court. The Reorganized Debtor may, at any time and regardless of whether an objection to the Disputed Claim has been brought, request that the Bankruptcy Court estimate, set, fix or liquidate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed or liquidated shall be deemed the Allowed amounts of such Claims for purposes of establishing the appropriate reserves or Distributions under this Plan. In lieu of estimating, fixing, or liquidating the amount of any Disputed Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the Debtor and the Holder of a Disputed Claim.

### 5.8.4 **Distributions Upon Allowance of Disputed Claims.**

The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distributions from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made, without interest, in accordance with this Plan based upon the Distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No Holder of a Disputed Claim shall have any Claim against the Disputed Claims Reserve or the Reorganized Debtor with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no Holder of a Disputed Claim shall have any right to Distribution on such Disputed Claim except as provided in this Section.

### 5.8.5 **Withholding of Taxes**. The Reorganized Debtor shall withhold from any Property distributed under the Plan any Property which must be withheld for foreign, federal, state, or local taxes payable with respect thereto or payable by the Person entitled to such Property to the extent required by applicable law.

### 5.9 Unclaimed Property.

Any Cash or other Property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto (including any non-negotiated checks) as of the later of (a) one (1) year after the Confirmation Date or (b) one hundred twenty (120) calendar days after the Distributions shall become vested in the Reorganized Debtor to be applied toward the funding of the Plan. In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or Distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such Distribution and shall not participate in any further Distributions under the Plan with respect to such Claim.

5.10    Exoneration and Reliance.

Neither the Debtor nor Reorganized Debtor shall be liable to any Holder of a Claim or Equity Interest or other party with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtor; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (c) the administration of the Plan or Property to be distributed pursuant to the Plan and the Plan Documents, other than for willful misconduct or gross negligence.  The Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall conclusively establish good faith and the absence of willful misconduct.  In any action, suit, or proceeding by any Holder of a Claim or Equity Interest or other party in interest contesting any action by, or non-action of, the Debtor as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party.

5.11    Effectuating Documents and Further Transactions.

The executive officers of the Debtor shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

# ARTICLE 6
# EFFECTS OF PLAN CONFIRMATION

6.1    Discharge and Injunction.

Except as otherwise explicitly provided in this Plan, to the fullest extent allowable under Section 1141(d) of the Bankruptcy Code, Confirmation of the Plan shall discharge the Debtor from (1) all Claims against the Debtor or its Property (including, but not limited to, Claims based upon any act or omission, transaction, or other activity or security instrument or other agreement of any kind or nature occurring, arising, or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act, or omission of the Debtor) against, (2) liabilities of the Debtor or its Property (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code), (3) all Liens on any Property of the Debtor, (4) obligations of the Debtor of its Property, and Equity Interests in the Debtor or the Property of the Debtor, whether known to, unknown, or knowable by the Holder thereof, either directly or derivatively through the Debtor, against successors and assigns of the Debtor, based on the same subject matter as any Claim or Equity Interest, in each case regardless of whether or not a Proof of Claim or Proof of Equity Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Equity Interest voted on or accepted the Plan.  Except for the obligations expressly imposed by the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment, and termination of all such Claims against, liabilities of, Liens on, obligations of, and Equity Interests in the Debtor and/or

Property of the Debtor. In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtor and its Property, as well as any proceedings not yet instituted against the Debtor or its Property, except as otherwise provided in the Plan.

As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim, Lien, or Equity Interest or the commencement of legal action or process against the Debtor or against the property of the Debtor.

Furthermore, but in no way limited to the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by the Plan, any Person or Governmental Unit accepting any Distribution pursuant to the Plan shall be presumed conclusively to have released the Debtor and successors and assigns of the Debtor, from any cause of action based on the same subject matter as the Claim or Equity Interest on which the Distribution is received. This release shall be enforceable as a matter of contract against any Person or Governmental Unit that acquires any Distribution pursuant to the Plan.

6.2     No Liability for Tax Claims.

Unless a taxing authority has asserted a Claim against any Debtor before the bar date or as Allowed under the Bankruptcy Code, no Claim of such authority shall be Allowed against the Debtor for taxes, penalties, and/or interest arising out of the failure, if any, of any Debtor to have filed any tax return, including, but not limited to, any income tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

6.3     Vesting.

Except as otherwise expressly provided in the Plan, on the Effective Date, the Debtor shall be vested with all of the Assets and Property of the Debtor, free and clear of all Claims, Liens, encumbrances, charges, and/or other interests of Holders of Claims or Equity Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

6.4     Retention and Enforcement of Claims or Equity Interests.

Any rights or Retained Causes of Action or objection to any Claim under any theory of law, including, without limitation, under the Bankruptcy Code, accruing to any Debtor shall remain property of the Debtor pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. Confirmation of this Plan and entry of the Confirmation Order shall not (a) constitute an adjudication of any Retained Causes of Action or claim the Debtor may have against any parties, whether known or unknown, asserted or unasserted, contingent or unliquidated, or of the validity of any Claim against any Debtor regardless of whether such party accepts or rejects this Plan or has filed a Proof of Claim in any Reorganization Case; (b) act as *res judicata* or collateral estoppel with respect to any Retained Causes of Action or other claims of the Debtor; (c)

otherwise have any preclusive effect with respect to a claim or Retained Cause of Action that any Debtor have or may have prior to the Effective Date. In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, the Debtor shall retain all Retained Causes of Action available to the Debtor and/or its Estate, and to the fullest extent allowable under applicable law. After Confirmation, the Debtor, and in its sole discretion, shall be entitled to pursue, compromise, or abandon any and all of the Retained Causes of Action. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, on or after the Effective Date, the Debtor or Reorganized Debtor may appoint, with the Bankruptcy Court's approval, a representative to retain and enforce any Claim of Cause of Action preserved pursuant to this Section of the Plan.

6.5    Conditional Release of IWA.

**IN THE EVENT THE PLAN IS, AND EXPRESSLY CONDITIONED UPON THE PLAN BEING, CONFIRMED PURSUANT TO SECTION 1129(a) OF THE BANKRUPTCY CODE WITH THE ACCEPTANCE OF THE PLAN BY THE AFFIRMATIVE VOTE(S) OF THE HOLDER OF THE IWA CLAIM WITH RESPECT TO ALL IMPAIRED CLASSES IN WHICH THE HOLDER OF THE IWA CLAIM IS OR MAY BE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, THEN IN CONSIDERATION OF THE HOLDER OF THE IWA CLAIM'S ACCEPTANCE OF THE PLAN AND WAIVER OF ANY DISTRIBUTION ON ACCOUNT OF THE IWA DEFICIENCY CLAIM, IF ANY, AS OF THE EFFECTIVE DATE, DEBTOR AND THE REORGANIZED DEBTOR WILL BE DEEMED TO HAVE FOREVER RELEASED, WAIVED, AND DISCHARGED IWA FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES (OTHER THAN THE RIGHTS OF DEBTOR OR REORGANIZED DEBTOR TO ENFORCE THE CHAPTER 11 PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED THEREUNDER), WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE, INCLUDING ACTIONS IN CONNECTION WITH INDEBTEDNESS FOR MONEY BORROWED BY DEBTOR, TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO DEBTOR, THE REORGANIZED DEBTOR, THE REORGANIZATION CASE, OR THE CHAPTER 11 PLAN.**

# ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.

7.1.1    **Assumption**.   Any executory contracts or unexpired leases including all Tenant Leases that (a) have not been rejected by any Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to reject on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been assumed by the Debtor subject to Sections 7.1.2 and 7.2 below.   The Plan shall constitute a motion to assume such executory contracts and unexpired leases.   Entry of the Confirmation Order shall constitute approval of such assumptions.

7.1.2    **Rejection**.   Notwithstanding anything herein to the contrary, the Debtor may seek to reject certain executory contracts and unexpired leases that will be identified in a motion to reject the same pending on the Confirmation Date.

7.1.3    **Reservation**.   Notwithstanding anything herein to the contrary, this Section 7.1 shall not apply to any executory contract or unexpired lease that is treated otherwise under the Plan.

7.2    Cure.

At the election of the Debtor, any monetary default under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code, in one of the following ways:   (a) by payment of the default amount in Cash on the Effective Date; (b) by payment of the default amount in equal quarterly installments commencing on the Effective Date and continuing for one (1) year with interest payable with the final installment(s) and with principal pre-payable at any time with no penalty or premium; (c) on such other terms as agreed to by the parties to such executory contract or unexpired lease; or (d) as determined by Final Order of the Bankruptcy Court.   In the event of a dispute regarding the (i) the amount of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

7.3    Damages Upon Rejection.

The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before the earlier of thirty (30) calendar days following the Confirmation Date or as provided under separate orders of the Bankruptcy Court.

To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as an Allowed General Unsecured Claim. The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtor shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

## ARTICLE 8
## EFFECTUATION AND SUPERVISION OF THE PLAN

8.1    Jurisdiction.

Until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor and to adjudicate and enforce all causes of action that may exist on behalf of the Debtor. Nothing contained herein shall prevent the Reorganized Debtor from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtor have or may have and that may not have been enforced or prosecuted by the Debtor, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein.

8.2    General Retention.

Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim. The failure by the Debtor to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the rights of the Debtor to object to or re-examine such Claim, in whole or in part.

8.3    Specific Purposes.

8.3.1    To modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

8.3.2    To correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Plan Documents, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, the Plan Documents, and any other documents related thereto in the event the Effective Date does not occur as

provided herein, so that the intended effect of the Plan, the Plan Documents, and such other documents may be substantially realized thereby;

8.3.3    To assure the performance by the Reorganized Debtor of its obligations to make Distributions under the Plan and the Plan Documents;

8.3.4    To enforce and interpret the terms and conditions of the Plan and the Plan Documents;

8.3.5    To enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights, and powers of the Reorganized Debtor;

8.3.6    To enforce and interpret the terms and conditions of the Plan Documents;

8.3.7    To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor or its Estate arising prior to the Effective Date or relating to the period of administration of the Reorganization Case;

8.3.8    To hear and determine all applications of compensation of professionals and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code;

8.3.9    To hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtor, or its officers, directors, stockholders, members, attorneys, financial advisors, representatives, and/or agents;

8.3.10   To determine any and all motions pending on Confirmation for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

8.3.11   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

8.3.12   To consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or its Estate;

8.3.13   To determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

8.3.14   To consider, determine, and act on any dispute arising out of or in connection with the Class 6  Injunction and/or the Guarantor Debt;

8.3.15  To enter such Orders as are necessary to implement and enforce any other Orders entered in the Reorganization Case; and

8.3.16  To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

# ARTICLE 9
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

9.1  <u>Conditions to Confirmation</u>.

Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor.  These Confirmation conditions are as follows:

9.1.1  **Disclosure Statement**.  The Bankruptcy Court shall have approved the Disclosure Statement in a Final Order.

9.1.2  **Confirmation Order**.  The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Debtor.

9.2  <u>Conditions to Effectiveness</u>.

The Effective Date shall occur on that day which is the first Business Day that is at least fifteen (15) days after the date of entry of the Confirmation Order.  Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Debtor:

9.2.1  **Final Confirmation Order**.  The Confirmation Order (and such related Orders) shall have become a Final Order.

9.3  <u>Waiver</u>.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Debtor.

# ARTICLE 10
## ACCEPTANCE OR REJECTION OF PLAN

10.1    <u>Each Impaired Class Entitled to Vote Separately</u>.

Each Impaired Class of Claims or Equity Interests receiving a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan.  The Holders of Allowed Claims in the following Classes are entitled to vote:  Classes 2, 3(A), 3(B), 4, 5, and (to the extent IWA does not make the IWA Election) 6.

10.2    <u>Class Acceptance Requirement</u>.

Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

10.3    <u>Cramdown</u>.

If any Impaired Class of Claims fails to accept the Plan by the requisite majority, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Equity Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Equity Interest.

# ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1    <u>Revocation of Plan</u>.

The Debtor reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtor revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtor, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor, or such Person in any further proceedings involving the Debtor.

11.2    <u>Headings</u>.

Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

11.3     Due Authorization by Holders of Claims.

Each and every Holder of a Claim who elects to participate in the Distributions provided for herein warrants that such Holder is authorized to accept, in consideration of such Holder's Claim against the Debtor, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such Holder under the Plan.

11.4     Time.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

11.5     Transactions on Business Days.

If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

11.6     Payment on Distribution Dates.

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall, instead, be made, without interest, on the next Business Day thereafter.

11.7     Fractional Dollars.

Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollars (rounding up in the case of $0.50 or more and rounding down in the case of less than $0.50).

11.8     Unclaimed or De Minimis Distributions.

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further Distributions under the Plan.  De minimus Distributions of Cash or Property having a value of less than five dollars ($5.00) shall not be made.

If a Distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, as to such Distribution, within ninety (90) days of the return of such Distribution the amount of Cash attributable to such Distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such Distribution and will not participate in any further Distributions under the Plan.

11.9     Modification of Payment Terms.

The Debtor reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

11.10     Entire Agreement.

The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents.   No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

11.11     Confirmation Order.

In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtor during the period commencing on the Petition Date and ending on the Effective Date.

11.12     Further Authorizations.

The Debtor, if and to the extent necessary, shall seek such Orders, judgments, injunctions, and/or rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

11.13     Exemption from Securities Laws.

The membership units to be issued in connection with this Plan, if any, will be issued pursuant to the exemption from the registration requirements of the Securities Act of 1933 (and of equivalent state securities or "blue sky" laws) to the fullest extent permissible as provided by Section 1145(a) of the Bankruptcy Code.

11.14 <u>Transfer Taxes</u>.

The transfer of any Property pursuant to the Plan or the Plan Documents, or the making or delivery of an instrument of transfer under the Plan or the Plan Documents, shall not (and the Confirmation Order shall so provide), to the fullest extent permissible under Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, and/or other similar tax.

11.15 <u>Recordable Order</u>.

The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

11.16 <u>Governing Law</u>.

Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

11.17 <u>Severability</u>.

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Equity Interest, such provision shall be unenforceable either as to all Holders of Claims or Equity Interests or as to the Holder of such Claim or Equity Interest as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.18 <u>No Interest</u>.

Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date is to be Allowed on any Claim.

11.19 <u>No Attorneys' Fees</u>.

No attorneys' fees or costs shall be Allowed or paid with respect to any Claim except may be specifically Allowed under Section 506(b) of the Bankruptcy Code and by a Final Order of the Bankruptcy Court.

11.20    Consent to Jurisdiction.

Upon default under the Plan, the Reorganized Debtor consents to the jurisdiction of the unit of the United States District Court for the Middle District of Florida, Tampa Division, known as the Bankruptcy Court for that District, or any successor thereto, and agrees that it shall be the preferred forum for all proceedings relating to such default.

11.21    Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, setoff against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that the Debtor may have against such Holder.

11.22    Successors and Assigns.

The rights, duties, and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

11.23    Reservation.

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Reorganization Case shall be reserved in full.  Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Reorganization Case shall be bound or deemed prejudiced by any such Concession.

## ARTICLE 12
## MODIFICATION OF PLAN

12.1    Modification of Plan.

The Debtor may propose amendments to, or modifications of, the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor may remedy any defects or omissions or reconcile any inconsistencies in the Plan or the Confirmation Order or any other Order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as the interests of the Holders of Allowed Claims are not materially and adversely affected.

12.2    Notices.

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

If to the Debtor:

Hubbard Properties, LLC
150 John's Pass Boardwalk West
Madeira Beach, FL  33708

With mandatory copies to:

Jennis & Bowen, P.L.
400 North Ashley Drive
Suite 2540
Tampa, Florida  33602

Dated: Tampa, Florida
        November 15, 2011

HUBBARD PROPERTIES, LLC

By:  */s/ Patricia Hubbard*_____
        Patricia Hubbard, Managing Member